Daniel Sadeh, Esq.
**HALPER SADEH LLP**
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*

### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| CAMERON WEIR, | Case No: |
| Plaintiff, | |
| v. | JURY TRIAL DEMANDED |
| ACASTI PHARMA INC., RODERICK CARTER, JAN D'ALVISE, JOHN CANAN, and DONALD OLDS, | |
| Defendants. | |

### COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Plaintiff Cameron Weir ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

### NATURE OF THE ACTION

1.      This is an action against Acasti Pharma Inc. ("Acasti" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in

1

connection with the proposed merger (the "Proposed Transaction") of Acasti and Grace Therapeutics, Inc. ("Grace").

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District, the alleged misstatements entered and the subsequent damages occurred in this District, and the Company conducts business in this District.[1]

5.      In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.      Plaintiff is, and has been at all relevant times hereto, an owner of Acasti common stock.

7.      Defendant Acasti is a biopharmaceutical company that engages in the development and commercialization of pharmaceutical products for cardiovascular diseases. The Company is

---

[1] For example, the Company reportedly participated in conferences in New York City in recent years.

incorporated in North Carolina. The Company's common stock trades on the NASDAQ under the ticker symbol, "ACST."

8.      Defendant Roderick Carter ("Carter") is Chairman of the Board of the Company.

9.      Defendant Jan D'Alvise ("D'Alvise") is President, Chief Executive Officer, and a director of the Company.

10.     Defendant John Canan ("Canan") is a director of the Company.

11.     Defendant Donald Olds ("Olds") is a director of the Company.

12.     Defendants Carter, D'Alvise, Canan, and Olds are collectively referred to herein as the "Individual Defendants."

13.     Defendants Acasti and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A.  The Proposed Transaction

14.     On May 7, 2021, Acasti announced that it had entered into a definitive agreement to acquire Grace. In connection with the Proposed Transaction, Grace will merge with a new wholly owned subsidiary of Acasti. Grace stockholders will receive newly issued Acasti common shares pursuant to an exchange ratio formula set forth in the definitive agreement. Under the terms of the definitive agreement, immediately following the consummation of the Proposed Transaction, Acasti's securityholders on a pro forma basis would own approximately 55% of the combined company's common shares, and Grace's securityholders would own approximately 45% of the combined company's common shares.

15.     The press release announcing the Proposed Transaction states, in pertinent part:

**Acasti Announces Definitive Agreement to Acquire Grace Therapeutics, Inc.**

May 07, 2021 07:00 ET | Source: Acasti Pharma, Inc.

*Grace provides Acasti with a pipeline of rare and orphan disease programs, including 3 clinical stage assets that have received Orphan Drug Designation from the FDA*

*Expects lead asset to complete PK Bridging Study in early 2022, with potential to advance directly into a Phase 3 clinical safety trial for Subarachnoid Hemorrhage*

*Combination creates a unique rare disease company with innovative drug delivery technologies, and is expected to have ~$64M in cash at closing to advance lead clinical assets*

LAVAL, Québec, May 07, 2021 (GLOBE NEWSWIRE) -- Acasti Pharma Inc. ("**Acasti**" or the "**Company**") (Nasdaq: ACST and TSX-V: ACST) announces it has entered into a definitive agreement to acquire Grace Therapeutics, Inc. ("**Grace**"), a privately held emerging biopharmaceutical company focused on developing innovative drug delivery technologies for the treatment of rare and orphan diseases (the "**Proposed Transaction**"). Subject to the completion of the Proposed Transaction, Acasti will acquire Grace's pipeline of drug candidates addressing critical unmet medical needs with the potential to deliver significant value to patients and providers. It is anticipated that the cash at closing of about $64 million will be principally used to pursue the clinical development of the first two assets through Phase 3, and further advance earlier pipeline assets into the clinic. The Proposed Transaction has been approved by the boards of directors of both companies and is supported by Grace shareholders through voting and lock-up agreements with the Company. The transaction remains subject to approval of Acasti stockholders, as well as applicable stock exchanges.

The Company has posted a presentation summarizing key highlights of the transaction, which is available on both the Acasti and Grace websites. Acasti plans to file the required Form S-4 proxy statement with the U.S. Securities & Exchange Commission (SEC), which will include detailed disclosures regarding the transaction. Following the filing of the required Form S-4, Acasti and Grace management plan to host an investor conference call to further discuss the anticipated benefits of the acquisition and answer investor questions. Acasti will call a shareholder meeting to approve the transaction following the public filing of the Form S-4 proxy statement. As the Proposed Transaction moves forward, Acasti continues to evaluate strategic options for value creation from its existing assets.

In connection with the Proposed Transaction, Acasti will acquire Grace's entire therapeutic pipeline consisting of three unique clinical stage and multiple pre-clinical stage assets supported by an intellectual property portfolio consisting of

more than 40 granted and pending patents in various jurisdictions worldwide. Grace's product candidates aim to improve clinical outcomes by applying proprietary formulation and drug delivery technologies to existing pharmaceutical compounds to achieve improvements over the current standard of care or provide treatment for diseases with no currently approved therapy. Grace's three lead programs have all received Orphan Drug Designation[1] from the U.S. Food & Drug Administration (FDA), which could provide up to seven years of marketing exclusivity in the United States upon FDA's approval of the New Drug Application (NDA), provided that certain conditions are met.

*     *     *

**Management and Operations**

Upon shareholder approval of the Proposed Transaction, the combined companies will be led by Jan D'Alvise as president and chief executive officer, and the corporation will continue to maintain its corporate headquarters in Laval, Quebec, Canada. All Grace employees will transition to Acasti and they will continue to maintain an R&D laboratory and commercial presence in North Brunswick, New Jersey. The new Board of Directors will be composed of 4 representatives from Acasti and 3 from Grace, with more details to be provided in the proxy statement.

**About the Proposed Transaction**

Pending approval by Acasti shareholders as well as applicable stock exchange approvals, Grace will merge with a new wholly owned subsidiary of Acasti. Grace stockholders will receive newly issued Acasti common shares pursuant to an exchange ratio formula set forth in the definitive agreement. Under the terms of the definitive agreement, immediately following the consummation of the Proposed Transaction, Acasti's securityholders on a pro forma basis would own approximately 55% of the combined company's common shares, and Grace's securityholders would own approximately 45% of the combined company's common shares, in each case calculated on a fully-diluted basis, subject to upward adjustments in favor of Acasti based on each company's capitalization and net cash balance as set forth in the definitive agreement, with more details to be provided in the proxy statement. For illustrative purposes, assuming no adjustments for each company's capitalization and net cash balance, and based on 208,375,549 common shares of Acasti currently issued and outstanding, an aggregate of 170,489,086 common shares of Acasti would be issued to Grace stockholders as consideration for the Proposed Transaction.

In connection with the entering into the definitive agreement, Grace stockholders representing substantially all of the outstanding shares of Grace have entered into voting and lock-up agreements with the Company pursuant to which they have agreed, amongst other things to (i) vote their shares of Grace in favor of the Proposed Transaction, (ii) be subject to lock-up provisions for a period of 12

months (subject to certain exceptions), and (iii) support the election of board nominees through to the 2023 annual general meeting of shareholders.

The Proposed Transaction is expected to close in calendar Q3 of 2021, immediately following approval by Acasti shareholders, subject to any applicable SEC review and stock exchange approvals, as well as satisfaction of other closing conditions by each company specified in the definitive agreement.

Acasti will take steps to regain compliance with Nasdaq's minimum bid price requirements in connection with the Proposed Transaction, and if required, would implement a share consolidation.

Oppenheimer & Co. is acting as Acasti's financial advisor for the Proposed Transaction and Osler, Hoskin & Harcourt, LLP is serving as its legal counsel. William Blair & Company, LLC is serving as financial advisor to Grace, with Reed Smith, LLP serving as its legal counsel.

The Proposed Transaction is an arm's length transaction in accordance with the policies of the TSX Venture Exchange.

*      *      *

**About Acasti**

Acasti is a biopharmaceutical innovator that has historically focused on the research, development and commercialization of prescription drugs using OM3 fatty acids delivered both as free fatty acids and bound-to-phospholipid esters, derived from krill oil. OM3 fatty acids have extensive clinical evidence of safety and efficacy in lowering triglycerides in patients with hypertriglyceridemia, or HTG. CaPre, an OM3 phospholipid therapeutic, was being developed for patients with severe HTG.

**About Grace**

Grace Therapeutics is an emerging biopharmaceutical company focused on rare and orphan diseases with high unmet medical needs. Grace's strategy is to improve clinical outcomes using novel drug delivery technologies to approved pharmaceutical compounds and achieve enhanced efficacy, faster onset of action, reduced side effects, convenient delivery, and increased patient compliance. Grace has a therapeutic pipeline of three unique clinical stage programs, several preclinical assets, and a robust intellectual property portfolio of over 40 granted and pending patent applications.

16.     On July 15, 2021, Defendants caused to be filed with the SEC a Form 424B3 -

Prospectus (the "Prospectus") in connection with the Proposed Transaction.

**B.  The Prospectus Contains Materially False and Misleading Statements and Omissions**

17.     The Prospectus, which recommends that Acasti shareholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning: (i) Acasti's, Grace's, and the combined company's financial projections; (ii) the financial analyses performed by Acasti's financial advisor, Oppenheimer & Co. Inc. ("Oppenheimer "), in connection with its fairness opinion; (iii) potential conflicts of interest involving Oppenheimer; (iv) the sales process leading up to the Proposed Transaction; and (v) potential conflicts of interest involving Company insiders.

18.     The omission of the material information (referenced below) renders the following sections of the Prospectus false and misleading, among others: (i) Background of the Merger; (ii) Recommendation of the Acasti Board of Directors; Acasti's Reasons for the Merger; and (iii) Opinion of Acasti's Financial Advisor.

19.     Unless and until the material misstatements and omissions (referenced below) are remedied before the August 26, 2021 shareholder vote on the Proposed Transaction, Acasti shareholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

**1.  Material Omissions Concerning Acasti's, Grace's, and the Combined Company's Financial Projections**

20.     The Prospectus omits material information concerning Acasti's, Grace's, and the combined company's financial projections.

21.     The Prospectus provides that, in connection with its fairness opinion, Oppenheimer reviewed and relied upon the following:

- financial forecasts and estimates related to Grace prepared by the management of Grace, as adjusted by management of Acasti and approved

for Oppenheimer's use by Acasti (which we refer to as the "Projections"); and

- discussions with the senior management and advisors of each of Acasti and Grace with respect to the business and prospects of each of Acasti and Grace, respectively.

*See* Prospectus at 107.

22.     Yet, the Prospectus fails to disclose any of Acasti's, Grace's, or the combined company's financial projections, despite the fact that such projections were prepared by the managements of Grace and Acasti and were relied upon by Oppenheimer in connection with its fairness opinion and related financial analyses. This information is further material as Acasti shareholders are expected to own approximately 55% of the combined company, but without Acasti's, Grace's, and the combined company's financial projections, the Company's shareholders cannot adequately evaluate and assess the value of Acasti, Grace, or the combined company.

23.     The disclosure of this information is material because it would provide the Company's shareholders with a basis to project the future financial performance of the Company and combined company and would allow shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company. Without such information, which is uniquely possessed by Defendant(s) and the Company's financial advisor, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisor's fairness opinion in determining whether to vote for or against the Proposed Transaction.

24.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 2. Material Omissions Concerning Oppenheimer's Analyses

25.     In connection with the Proposed Transaction, the Prospectus omits material information concerning analyses performed by Oppenheimer.

26.     With respect to Oppenheimer's "*Selected Public Companies Analyses*" and "*Selected Transactions Analysis*," the Prospectus fails to disclose the individual multiples and financial metrics of each company and transaction Oppenheimer observed in its analyses.

27.     The Prospectus fails to disclose the following concerning Oppenheimer's "*Discounted Cash Flow Analysis*": (1) the standalone after-tax free cash flows that Grace management forecasted to be generated during the calendar years ending December 31, 2021 through the calendar year ending December 31, 2031, and all underlying line items; (2) the terminal values for Grace; (3) the individual inputs and assumptions underlying the (i) range of declining perpetuity rates of 0.0% to 1.0%, and (ii) discount rates ranging from 10.5% to 11.5%; and (4) the amount of Grace's PPP loan.

28.     With respect to Oppenheimer's "*Implied Equity Exchange Ratio Range Analysis*," the Prospectus fails to disclose the individual inputs and assumptions underlying the combined company's implied equity values.

29.     The valuation methods, underlying assumptions, and key inputs used by Oppenheimer in rendering its purported fairness opinion must be fairly disclosed to Acasti shareholders. The description of Oppenheimer's fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses. Without the information described above, Acasti shareholders are unable to fully understand Oppenheimer's fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to the Company's

shareholders.

### 3. Material Omissions Concerning Potential Conflicts of Interest Involving Oppenheimer

30.     The Prospectus omits material information concerning potential conflicts of interest involving Oppenheimer.

31.     The Prospectus provides that, "[i]n the two years preceding the date of its opinion, Oppenheimer . . . did provide investment banking, financial advisory and/or other financial services to Acasti, for which Oppenheimer received consideration[.]"

32.     While the Prospectus provides the compensation Oppenheimer received for acting as a placement agent to Acasti in connection with Acasti's at-the-market offering in the first quarter of 2021, the Prospectus fails to disclose the ***total*** amount of compensation Oppenheimer received or expects to receive for providing services to Acasti within the past two years of the date of its fairness opinion. *See* 17 C.F.R. § 229.1015(b)(4) (requiring disclosure of all material relationships between a company and its financial advisors and the compensation received by the advisors during the past two years).

33.     Disclosure of a financial advisor's compensation and potential conflicts of interest to shareholders is required due to their central role in the evaluation, exploration, selection, and implementation of strategic alternatives and the rendering of any fairness opinions. Disclosure of a financial advisor's potential conflicts of interest may inform shareholders on how much weight to place on that analysis.

34.     The omission of the above-referenced information renders the Prospectus materially incomplete and misleading. This information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

10

**4. Material Omissions Concerning the Sales Process Leading up to the Proposed Transaction**

35.     The Prospectus omits material information concerning the sales process leading up to the Proposed Transaction.

36.     The Prospectus provides that, "[i]n the period between September 2020 and early January 2021, 18 companies signed a confidentiality agreement with Acasti, expressing their interest in learning more about a transaction with Acasti[.]"

37.     The Prospectus, however, fails to disclose the terms of the Company's confidentiality agreements, including whether such agreements contained standstill provisions with "don't ask, don't waive" (DADW) provisions (including their time of enforcement) that would preclude potentially interested parties from making superior offers for the Company.

38.     Without this information, Acasti shareholders may have the mistaken belief that potential suitors are or were permitted to submit superior proposals for the Company, when in fact they are or were contractually prohibited from doing so. This information is material because a reasonable Acasti shareholder would want to know, prior to voting for or against the Proposed Transaction, whether other potential buyers are or were foreclosed from submitting a superior proposal.

39.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

**5. Material Omissions Concerning Company Insiders' Potential Conflicts of Interest**

40.     The Prospectus omits material information concerning potential conflicts of interest involving Company insiders.

41.     The Prospectus provides that, between April 26, 2021 and April 29, 2021, Acasti management and Grace management discussed "employee matters."

42.    The Prospectus provides the following concerning management and directors of the combined company following consummation of the Proposed Transaction:

### Director Positions Following the Merger

Each of Dr. Roderick N. Carter, Mr. Jean Marie (John) Canan, Mr. Donald Olds (collectively "Independent Directors") and Ms. Jan D'Alvise (President and CEO), currently each a member of the Acasti board, is expected to remain a member of the board of directors of the combined company and Independent Directors will receive compensation to be paid as directors of the combined company. For a description of Acasti's Independent Director compensation policy and the amounts paid to Acasti's directors in fiscal 2020, please see "Executive Compensation" in Acasti's Annual Report on Form 10-K filed with the SEC for the fiscal year ended March 31, 2021.

### Merger-Related Compensation of Executive Officers

*Retention Agreements*

In connection with its strategic review process and upon the recommendation of its governance and human resources committee, in October 2020 Acasti entered into retention incentive agreements with Ms. Jan D'Alvise, President and Chief Executive Officer, and Mr. Pierre Lemieux, Chief Operating Officer and Chief Scientific Officer (the "Retention Agreements").

The Retention Agreements provide that Acasti will pay Ms. D'Alvise an employment retention incentive of $100,000 provided that she remains employed with Acasti until the earlier of April 30, 2021 or the closing of a merger or like transaction with a third party. As per the terms of the Retention Agreements, this amount was paid on May 6, 2021. Mr. Lemieux was also awarded a $25,000 retention bonus which was paid on May 6, 2021.

In addition, the Retention Agreements also provide that Acasti will pay each of Ms. D'Alvise and Mr. Lemieux an amount of up to $125,000 in the event that certain milestones are met, including the closing of a merger or like transaction with a third party. A minimum amount of $75,000 is also payable by Acasti to each of Ms. D'Alvise and Mr. Lemieux in the event of the termination of their employment without cause prior to the achievement of such milestones.

43.    The Prospectus, however, fails to adequately disclose the details of all employment-related and compensation-related discussions and negotiations concerning the Company's officers and directors, including the parties to such communications, when they occurred, and the specific

content discussed/communicated.

44.     Any communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to shareholders. This information is necessary for shareholders to understand potential conflicts of interest of management and the Board. Such information may illuminate the motivations that would prevent fiduciaries from acting solely in the best interests of the Company's shareholders.

45.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

<u>**COUNT I**</u>
**For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder**
<u>**Against All Defendants**</u>

46.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

47.     During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Prospectus specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

48.     Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Prospectus with respect to the Proposed Transaction. The Defendants were, at minimum, negligent in filing the materially false and misleading Prospectus.

49.     The false and misleading statements and omissions in the Prospectus are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction.

50.     By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

51.     Because of the false and misleading statements and omissions in the Prospectus, Plaintiff is threatened with irreparable harm.

<u>**COUNT II**</u>
**Violations of Section 20(a) of the Exchange Act**
<u>**Against the Individual Defendants**</u>

52.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

53.     The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Prospectus filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Prospectus.

54.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Prospectus and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information

14

with respect to the Prospectus, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

55.     In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Prospectus and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Prospectus at issue contains the recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Prospectus.

56.     In addition, as the Prospectus sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Prospectus purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

57.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

58.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.      Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

B.      In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.      Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

D.      Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E.      Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: July 23, 2021                              Respectfully submitted,

**HALPER SADEH LLP**

By: /s/ Daniel Sadeh
Daniel Sadeh, Esq.
Zachary Halper, Esq. (to be admitted *pro hac vice*)
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com
        zhalper@halpersadeh.com

*Counsel for Plaintiff*